UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ASPEN TECHNOLOGY, INC.,         :

            Plaintiff,        :     Civil Action
       v.                 No. 19-11292-GAO

                                :

STEVEN WALTER,

                                :

            Defendant.

                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF ASPEN TECHNOLOGY, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
## <u>AN ORDER OF CIVIL CONTEMPT AGAINST DEFENDANT WALTER</u>

Of Counsel:

Stephen M. Karp
James S. D'Ambra, Jr.
ASPEN TECHNOLOGY, INC.
20 Crosby Drive
Bedford, Massachusetts 01730
Aspen Technology, Inc.


Dated: August 1, 2019

Kurt Wm. Hemr
Christopher G. Clark
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
kurt.hemr@skadden.com
christopher.clark@skadden.com

Counsel for Plaintiff
Aspen Technology, Inc.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

KEY FACTS ...........................................................................................................................2

      1.     The Evidence Presented To The Court
           Demonstrated That Walter's Channel Sales Work For
           AVEVA Was Competitive With His Prior Work For AspenTech ..........................2

      2.     When Walter Suggested That His Channel Partner
           Work At AspenTech Excluded Certain Industry Sectors In
           Which He Was Therefore Free To Work Competitively, The Evidence
           Presented To The Court Demonstrated That Walter's Claim Was False ...............8

      3.     AspenTech's Effort To Investigate Walter's
           Non-Compliance With This Court's Injunctions Received No Response.............11

ARGUMENT...........................................................................................................................11

I.     THE COURT SHOULD HOLD WALTER IN
       CONTEMPT FOR VIOLATING THIS COURT'S PRELIMINARY
       INJUNCTION AND SHOULD IMPOSE AN APPROPRIATE SANCTION .................11

CONCLUSION.......................................................................................................................14

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

Cooke v. United States,
    267 U.S. 517 (1925)................................................................................................11

United States v. Saccoccia,
    433 F.3d 19 (1st Cir. 2005)..................................................................................12

McAnarney v. Optimum Building & Inspection Corp.,
    Civ. A. No 13-11115-GAO, 2016 WL 1601190 (D. Mass. Apr. 20, 2016) ......................12

United States v. United Mine Workers,
    330 U.S. 258 (1947)................................................................................................13

Goya Foods, Inc. v. Wallack Management Co.,
    290 F.3d 63 (1st Cir. 2002)..................................................................................13

Cricket Communications, Inc. v. Talk Til You Drop Wireless, Inc.,
    Civil No. 3:09-0128, 2009 WL 2850687 (M.D. Tenn. Sept. 1, 2009)................................13

## PRELIMINARY STATEMENT

On June 5, 2019, Plaintiff Aspen Technology, Inc. ("AspenTech") commenced this action to require Defendant Steven Walter, its former employee, to comply with the terms of his agreement with AspenTech restraining his competitive post-AspenTech employment for a 12-month period.  In particular, Walter had worked in a senior capacity in AspenTech's channel sales operations, and yet immediately upon leaving AspenTech, Walter became "Vice President, Global Channel Sales" for AspenTech's direct competitor AVEVA and began reaching out to AspenTech's channel partners.  Forensic investigation revealed that Walter had taken substantial volumes of AspenTech's confidential and proprietary business materials, including critical Channel sales competitive strategy plans, with him to AVEVA.

On June 21, 2019, following briefing and argument by the parties, the Court entered a Temporary Restraining Order against Walter requiring him to comply with his agreement with AspenTech.   (ECF No. 18; see also ECF No. 33 (extending order).)  On July 17, 2019, this Court entered a Preliminary Injunction against Walter, enjoining him:

> "from providing to AVEVA Group plc, Aveva Inc. or any subsidiary or affiliate (collectively, 'AVEVA') any services substantially similar to or competitive with any project in which Walter was engaged in the twelve months immediately prior to his departure from AspenTech."  (ECF No. 45, ¶ 5.)

To be sure, the Court's order did not prohibit Walter from working for AVEVA altogether, but it explicitly barred him from providing any services to AVEVA "substantially similar to or competitive with any project" in which Walter had been engaged in his last year at AspenTech.

On July 29, 2019, AspenTech asked Walter's counsel why, in view of the Court's injunction, Walter was still holding himself out on the business network LinkedIn as "Vice President, Channel Sales" for AVEVA, noting that perhaps Walter had failed to correct his online profile.  (See Hemr Transmittal Decl. (filed herewith), Ex. A.)  Shockingly, Walter's

counsel advised that Walter did not consider himself in any way constrained by the Court's

injunction, because he believed that no evidence had been presented that his work for AVEVA

would be competitive with his prior work at AspenTech:

> "[A]s the evidence presented to the Court demonstrated, Mr. Walter's duties and activities as AVEVA's Vice President, Channel Sales do not involve, or require him to perform, any services that are 'substantially similar to or competitive with any project' in which he was engaged 'in the twelve months immediately prior to his departure from AspenTech.' Accordingly, there is nothing in the Preliminary Injunction (or in the Agreement) that prevents Mr. Walter from working for AVEVA as its Vice President, Global Channel Sales." (Hemr Transmittal Decl. Ex. B.)

In short: after two months of intensive litigation, Walter self-servingly announced

that he was not constrained in any way from engaging in the directly competitive work that the

litigation was commenced to forestall. It is hard to imagine a more blatant contempt of this

Court's processes. Accordingly, AspenTech brings this motion to enforce the Court's injunction

through appropriate measures.

## **KEY FACTS**

**1.      The Evidence Presented To The Court Demonstrated That Walter's Channel Sales Work For AVEVA Was Competitive With His Prior Work For AspenTech**

AspenTech commenced this action because Walter had taken competitive

employment at AVEVA, holding himself out publicly as its "Vice President, Channel Sales."

Walter had served in a critical role in channel sales at AspenTech. Robert Minaglia,

AspenTech's Vice President, Global Partners and Alliances, explained in his declaration:

> "At AspenTech, Mr. Walter was a high-ranking employee with significant responsibility for AspenTech's partner ecosystem, including channel partners and resellers, software vendors, and OEM partners. Mr. Walter had significant responsibility for defining and executing AspenTech's overall strategy and business plan for the global partner program, ***including cultivating relationships with current partners, developing new channels and enhancing existing channel partnership programs.***"

(Minaglia Decl., ECF No. 1-1, at 77, ¶ 4 (emphasis added).)  Walter's new role in cultivating and developing the channel partner network for AspenTech's direct competitor AVEVA as its "Vice President, Global Channel Sales" would plainly be both "substantially similar to" and "competitive with" that work he performed at AspenTech.

That Walter's work for AVEVA would be competitive with his prior work for AspenTech was confirmed beyond any possible doubt by the fact that Walter immediately sought to poach one of AspenTech's channel partners on AVEVA's behalf, as evidenced by an electronic mail message that Walter sent over the LinkedIn network on Friday, May 24, 2019:



Steve Walter · 1st
Vice President, Global Channel Sales at AVEVA GROUP PLC

FRIDAY

 Steve Walter · 3:35 PM

REDACTED

I hope that you are doing well. I recently left AspenTech to pursue an opportunity with AVEVA. My former management team from PTC landed at the company and recruited me to help address a few opportunities within the market.

Would you be interested in discussing a relationship with AVEVA that may include a services and or distribution component?  Prior to leaving, I understand there was conflict brewing with the Aspen direct sales team and thought you might be open to a conversation.

Best regards
Steve

(Compl. ¶ 60, ECF No. 1-1, at 16-17.)

That Walter intended to leverage his prior work at AspenTech in service of competitive employment at AVEVA was dramatically further confirmed by forensic evidence. Walter took numerous highly confidential and proprietary AspenTech strategy documents with

3

him to AVEVA, and indeed accessed those documents from his AVEVA-issued laptop.  Those

documents included, among others, numerous documents relating to AspenTech's partner

activity:

    (i)    2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q3FY19\Aspen *REDACTED*[1]_FindingsReport_FINAL_v5 - 4-1-2019.pptx

    (ii)    2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q3 FY19\*REDACTED* GTM Strategy - March 26 2019 - NEW.pptx

    (iii)    2017-18 - ASPEN Global Partner Sales\FY19 Activity\AVEVA - SCHNEIDER\Schneider Electric Battle Card (HYSYS)_2018 05.pdf

    (iv)    2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q3 FY19\*REDACTED*-asset reliab services.pdf

    (v)    2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q4 FY19\*REDACTED* ART - APM ISP agreement - August 2018.pdf

    (vi)    2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q3 FY19\*REDACTED* - Industry X.0 Overview_Aspentech - 4-11-2019.pdf

    (vii)    2017-18 - ASPEN Global Partner Sales\Strategic Alliances\*REDACTED* DOCS\AspenTech - *REDACTED* Alliance - Summary and Positioning - LATAM Update - SAVE 1-21-2019.pptx

    (viii)    2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q3 FY19\APM Commercial Model Mar 2019 - SAVE!!.pdf

    (ix)    2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q3 FY19\Pilots - *REDACTED* - FEB 28 2019.xlsx

    (x)    2017-18 - ASPEN Global Partner Sales\Strategic Alliances\*REDACTED*\DB - notes.docx

    (xi)    2017-18 - ASPEN Global Partner Sales\HR - related\Partner Manager - *REDACTED* Office - July 2018.docx

    (xii)    2017-18 - ASPEN Global Partner Sales\Strategic Alliances\*REDACTED*\20190405_*REDACTED* & AspenTech Growth Plan.pdf

---

[1]    The names of certain files referenced herein have been redacted in part to safeguard AspenTech's and its channel partners' and customers' confidential information and to permit the filing of this document in the public record.

4

(xiii)   2017-18 - ASPEN Global Partner Sales\Strategic Alliances\*REDACTED* \Inteligent Mining and Manufacturing of the Future v84.pdf

(xiv)   2017-18 - ASPEN Global Partner Sales\Strategic Alliances\*REDACTED*\ 20180322_*REDACTED* - Aspen Deal Registration Form.xlsx

(xv)    2017-18 - ASPEN Global Partner Sales\Strategic Alliances\REDACTED\Asset Performance Certainty - Opportunity Through Convergence - draft.pdf

(xvi)   2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q1 FY19\Q1 FY19 Forecast Meeting - Week of 8-20-2018.docx

(xvii)  2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q3 FY19\Short Fidelis Presentation for Mining - 4-11-2019.pdf

(xviii) 2017-18 - ASPEN Global Partner Sales\FY19 Activity\Q3 FY19\*REDACTED*-Digital Manufacturing_AT - 4-11-2019.pdf

(xix)   2017-18 - ASPEN Global Partner Sales\APM Related\APM SALES TRAINING SLIDES\Prospecting for New *REDACTED* Accounts - Sales Best Practices V1.1.pdf

(xx)    2017-18 - ASPEN Global Partner Sales\Strategic Alliances\AVEVA - SCHNEIDER\Schneider Electric Battle Card (HYSYS)_2018 05.pdf

(xxi)   2017-18 - ASPEN Global Partner Sales\Strategic Alliances\*REDACTED* \*REDACTED*_Investor-Day.pdf

(xxii)  2017-18 - ASPEN Global Partner Sales\FY19 Activity\AVEVA - SCHNEIDER\Growth Drivers 2019 - Internal Communication - SAVE FROM COO MEETING - Jan 6 2019.pptx

(xxiii) 2017-18 - ASPEN Global Partner Sales\FY19 Activity\AVEVA - SCHNEIDER\WI-TRONIX - REDACTED vs. REDACTED bakeoff - Feb 2019.docx

(Clark Decl. Re: Preliminary Forensic Report Of Arsenal Consulting, ECF No. 31, ¶ 13.)  Walter deleted these files from his AVEVA laptop after served with process in this action, apparently in an effort to conceal his wrongdoing.  (Id. ¶ 14.)

5

Indeed, within just a few days of his final day of employment at AspenTech, Walter used his AVEVA-issued laptop to access highly confidential strategy documents, including this slide presentation:







6

On the same day, Walter also accessed this confidential AspenTech strategy document that included a head-to-head competitive comparison of AspenTech and AVEVA:





(Clark Decl., ECF No. 31, ¶¶ 16-17.)

The Court was thus presented with compelling and overwhelming evidence that conclusively demonstrated that Walter's proposed channel partner work for AVEVA would be competitive with his prior channel partner work for AspenTech.

**2.    When Walter Suggested That His Channel Partner Work At AspenTech Excluded
Certain Industry Sectors In Which He Was Therefore Free To Work Competitively,
The Evidence Presented To The Court Demonstrated That Walter's Claim Was False**

In view of that evidence, Walter apparently recognized that he could not credibly

contend that his channel partner work at AVEVA was generally not competitive with his prior

channel partner work for AspenTech.  Accordingly, on the morning of the July 3, 2019 hearing

in this matter, Walter asserted that his channel partner work at AVEVA would be carefully

limited to industry sectors and tasks in which he claimed he had never worked at AspenTech:

> "Walter's industry focus at AVEVA would also be ***entirely different*** from the
> work he was doing at Aspen.  AVEVA's channel reseller focus (with respect to
> the Wonderware software portfolio) has been (and will continue to be for the next
> year at least) on channel resellers in two industries: Water Utilities and Food &
> Beverage.  During his time at Aspen, ***none*** of the channel partners with whom
> Walter worked operated in or sold into either the Water Utilities industry or the
> Food & Beverage industry."  (ECF No. 32, at 7 (emphasis added, citations
> omitted).)

In support of that assertion, Walter submitted a sworn affidavit stating:

> "During my time at AspenTech, the channel partners that I worked with and was
> responsible for did not operate in or sell into either the Water Utilities industry or
> the Food & Beverage industry."  (Supp. Walter Aff., ECF No. 32-2, ¶ 5.)

As the evidence was to demonstrate, however, those statements by Walter were simply false.

As Walter was well aware, AspenTech has numerous channel partners that

provide services to the food and beverage and water utilities industries, and indeed Walter

worked with those channel partners.  For example, Orbis MES Ltd. ("Orbis") is a Dublin,

Ireland-based company that focuses exclusively on the food and beverage industries.  Walter met

with Orbis personnel on numerous occasions on behalf of AspenTech.  Among other things, in

December 2018 and February 2019, Mr. Walter flew to Dublin and met with Orbis in Dublin on

behalf of AspenTech and had dinners with the Orbis team.  All that activity was confirmed by

8

Walter's contemporaneous AspenTech calendar entries and expense reports, which AspenTech provided to the Court.  (See Minaglia Decl., ECF No. 44, ¶¶ 6-8 & Ex. A.)

Indeed, forensic analysis revealed that Walter took with him from AspenTech a highly confidential and proprietary document bearing the title "FY20 GTM segmentation - SAVE.pptx" which provides information about AspenTech's market segmentation, channel sales strategy, and significant partners in the food & beverage industry, including Orbis:



That document includes detailed profiles of various AspenTech channel partners, including Orbis:

| | Partner | Location | Head Count | Dependancy on Aspen (est) | Annual revenues (est) | Annual growth rate | Geos |
|---|---|---|---|---|---|---|---|
| Tier ONE | | | REDACTED | | | | |
| | Orbis | | REDACTED | | | | |
| Tier Could b... | | | | | | | |
| | | | REDACTED | | | | |
| GAP | | | | | | | |

(Minaglia Decl., ECF No. 44, ¶¶ 9-10.)  The evidence presented by AspenTech also demonstrated that Walter had worked with (at least) one other channel partner at AspenTech who

9

serviced the food and beverage industry and with numerous channel partners that serviced the water utilities industry.  (Id. ¶¶ 11-13 & Ex. B.)

When confronted with all that evidence, Walter asserted — preposterously and incredibly — that he had completely forgotten those two international trips that he had taken on AspenTech's behalf within the previous seven months, variously asserting that he "paid no attention to Orbis," that "at the time of my July 3 Affidavit, [he] did not recall ever having met with any of its employees," and that the evidence presented by AspenTech "refreshed [his] recollection."  (Second Supp. Walter Aff., ECF No. 46, ¶ 7.)

Walter had also asserted in his July 3 filing that his work at AVEVA would differ from his prior work at AspenTech because he would be working on changing AVEVA's licensing model:

> "The sales models used by Aspen and AVEVA are also entirely different from one another.  Walter's job at AVEVA was (and would be) to convert the channel partners in AVEVA's Wonderware distribution channel from the 'perpetual license' sales model to the 'subscription' sales model.  Aspen did not use either of those models during Walter's time there — it used the 'token' model, which is vastly different from the 'perpetual license' and 'subscription' models."  (ECF No. 32, at 8 (citations omitted).)

That assertion by Walter was also false, as Mr. Minaglia explained:

> "Almost all of AspenTech's software licensing business today is based on the subscription license model, where the 'tokens' to which Mr. Walter refers are employed to limit usage during the course of the subscription term.  (Subscription licenses typically involve some limitation on usage during the subscription term; AspenTech software uses tokens as one of these limitations.)  AspenTech has been successful over the last 5-8 years in converting perpetual licenses to subscription licenses, exactly what Mr. Walter now says he was hired to do at AVEVA."  (ECF No. 46, ¶ 16.)

Walter's efforts to suggest that his channel work at AVEVA would be limited to avoid work that was neither "substantially similar to [nor] competitive with" his prior work at AspenTech were therefore conclusively refuted by the evidence presented.

10

**3.    AspenTech's Effort To Investigate Walter's Non-Compliance With
This Court's Orders And Preliminary Injunction Received No Response**

In view of that mountain of evidence, AspenTech was understandably shocked when Walter asserted on July 30 that "the evidence presented to the Court demonstrated [that] Mr. Walter's duties and activities as AVEVA's Vice President, Channel Sales do not involve, or require him to perform, any services that are 'substantially similar to or competitive with any project' in which he was engaged 'in the twelve months immediately prior to his departure from AspenTech,'" and "nothing in the Preliminary Injunction . . . prevents Mr. Walter from working for AVEVA as its Vice President, Global Channel Sales." (Hemr Transmittal Decl. Ex. B (emphasis added).)  As set forth above, the evidence presented was entirely to the contrary.

Accordingly, on the morning of July 31, 2019, AspenTech demanded that Mr. Walter immediately provide an accounting of his activity:  "please advise in detail what job responsibilities [Walter] holds at AVEVA as 'Vice President, Channel Sales' that he contends purportedly do not violate the Court's Preliminary Injunction."  (Hemr Transmittal Decl. Ex. C.) That is a question to which Walter and his counsel presumably had given some thought and therefore AspenTech asked that an answer be provided that same day.  As of this filing, AspenTech has received no response whatsoever.

**ARGUMENT**

**I.    THE COURT SHOULD HOLD WALTER
IN CONTEMPT FOR VIOLATING THIS COURT'S PRELIMINARY
INJUNCTION AND SHOULD IMPOSE AN APPROPRIATE SANCTION**

This Court has the "power to punish" the "[d]isobedience or resistance of its lawful writ, process [or] order." 18 U.S.C. § 401.  The sanction of civil contempt "protect[s] the due and orderly administration of justice and . . . maintain[s] the authority and dignity of the court."  Cooke v. United States, 267 U.S. 517, 539 (1925).

11

To prove civil contempt, a movant must show by clear and convincing evidence that (1) the alleged contemnor had notice of the order, (2) "the order was clear and unambiguous," (3) the alleged contemnor "had the ability to comply with the order," and (4) the alleged contemnor violated the order. United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005) (internal quotation marks omitted). This Court has observed that a "party raising a defense of impossibility" of complying with a court order "bears the burden of establishing the defense clearly and categorically." McAnarney v. Optimum Bldg. & Inspection Corp., Civ. A. No 13-11115-GAO, 2016 WL 1601190, at *3 (D. Mass. Apr. 20, 2016) (O'Toole, J., adopting report and recommendation of Boal, Mag. J.).

Here, there is no question that Walter had notice of the Court's preliminary injunction and that he had the ability to comply with it: Walter knew what work he performed in his last year at AspenTech — not least because the parties had just extensively litigated the question before this Court. The evidence presented to the Court clearly and conclusively established that Walter was significantly involved in AspenTech's channel sales efforts during his last 12 months at AspenTech, and Walter plainly recognized that his proposal to work as "Vice President, Global Channel Sales" would be competitive with that work. To the extent that the Court could credit Walter's belated averment that he failed to recall his prior work at AspenTech with channel partners in the Food & Beverage and Water Utilities industries, Walter's recollection has now been fully refreshed concerning that work. His refusal to explain what job responsibilities he could possibly be fulfilling as AVEVA's "Vice President, Global Channel Sales" that are not in violation of the Preliminary Injunction only serves as additional clear and convincing evidence that Walter is in flagrant violation of this Court's order. Walter

12

should not be permitted to relitigate this Court's entry of its Preliminary Injunction by standing in contempt of it now.

Accordingly, the Court should enter an order holding Walter in contempt of its Preliminary Injunction and compelling his compliance with it. The Supreme Court has recognized that an order of civil contempt may serve "either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." United States v. United Mine Workers, 330 U.S. 258, 303 & 304 (1947). The First Circuit has therefore noted that a district court has wide discretion in selecting the form of sanctions that may be levied against a non-compliant party. See Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 77 (1st Cir. 2002). AspenTech respectfully submits that the following sanctions would be appropriate for Walter's contempt here:

- Reimbursement of the complainant's attorneys' fees and expenses are commonly part of sanctions issued for civil contempt, Goya, 290 F.3d at 78, and would be entirely appropriate here.

- The Court should convert its preliminary injunction into a permanent injunction, both as a sanction and to deter any further contemptuous conduct on Walter's part. E.g., Cricket Commc'ns, Inc. v. Talk Til You Drop Wireless, Inc., Civil No. 3:09-0128, 2009 WL 2850687, at *5 (M.D. Tenn. Sept. 1, 2009) (holding, in view of evidence that contemnors were seeking to evade preliminary injunction enforcing limit on competition, "there is no doubt that the preliminary injunction should be made permanent").

13

- The Court should impose a monetary sanction on Walter that would be borne by him personally — i.e., not indemnified by his new employer — in order to ensure that Walter is fully cognizant of his personal obligation to comply with the Court's order.

## CONCLUSION

For all of the foregoing reasons, the Court should grant AspenTech's motion for an order of civil contempt against Defendant Walter.

Dated:   August 1, 2019
         Boston, Massachusetts

Respectfully submitted,

/s/ Kurt Wm. Hemr
Kurt Wm. Hemr (BBO #638742)
Christopher G. Clark (BBO #663455)

Of Counsel:

Stephen M. Karp (BBO #654114)
James S. D'Ambra, Jr. (BBO #687828)
ASPEN TECHNOLOGY, INC.
20 Crosby Drive
Bedford, Massachusetts 01730
(781) 221-6400

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
kurt.hemr@skadden.com
christopher.clark@skadden.com

Counsel for Plaintiff
Aspen Technology, Inc.

14